IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES F.,[1] ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, Commissioner of ) <br> Social Security, ) <br> ) <br>     **Defendant.** ) <br> ) | No. 19 C 4556 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff James F.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 9] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 14] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 17, 2015, Plaintiff filed a claim for DIB, alleging disability since February 7, 2012 due to various physical and mental impairments.[2] The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 31, 2018. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert also testified.

On September 5, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 7, 2012 to his date last insured of December 31, 2013. At step two, the ALJ concluded that Plaintiff had the following severe impairments: attention deficit hyperactivity

---

[2] At the ALJ hearing, Plaintiff amended his alleged onset date from April 23, 2009 to February 7, 2012.

disorder ("ADHD")/attention deficit disorder ("ADD"); degenerative joint disease of the knees and hips; and slipped capital femoral epiphysis ("SCFE"), a congenital hip issue. The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, and crouching; no kneeling or crawling; no exposure to the use of dangerous machinery or unprotected heights; performing only simple, routine, and repetitive tasks, involving occasional decisionmaking and changes in the work setting; no more than brief and superficial interaction with the public; and occasional interaction with coworkers.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as an ornamental ironworker and spray machine operator. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.

4

2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

5

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.   ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) she improperly evaluated the opinion evidence under the treating physician rule; (2) her RFC assessment did not properly accommodate all of Plaintiff's limitations; and (3) she lacked support for her rejection of his subjective statements of limitations.

### A.   **Treating Physician Rule**[3]

Plaintiff argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physicians, Dr. Ghumra and Dr. Edelberg. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*,

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2015, and therefore the ALJ was required to apply the former treating physician rule.

6

647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739; *see also Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) ("A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician."). The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c).

Plaintiff's treating pain management specialist, Dr. Ghumra, listed diagnoses of chronic pain syndrome, IBS, SCFE, idiopathic hypersomnia, obstructive sleep apnea, depression, and obsessive-compulsive disorder. He stated that Plaintiff was limited to much less than sedentary work and that he could sit for only three hours and stand or walk for about one hour in an eight-hour workday, could handle and finger only about fifty percent of the day, would be off-task more than thirty percent of the time, and would be absent from work five days or more per week.

Plaintiff's other treating physician, Dr. Edelberg, diagnosed Plaintiff with SCFE, myalgia, idiopathic hypersomnia, ADHD, OCD, alcoholism, drug addiction, IBS, arthritis, sleep apnea, depression, general anxiety, panic attacks, hypoxemia, bone on bone in back, knees, and hips, and myofascial pain syndrome. Dr. Edelberg also believed that Plaintiff was severely limited and unable to consistently work at

7

the sedentary level, and that he would be excessively absent and unable to concentrate, and he would have difficulty using his hands. Dr. Edelberg noted that Plaintiff had SCFE his entire life, even though he was not aware of it.

The ALJ gave the opinions of the treaters little to no weight, primarily because they did not begin treating Plaintiff until well after the December 31, 2013 date last insured – Dr. Ghumra in June 2016 and Dr. Edelberg in September 2016. Moreover, although both physicians opined that Plaintiff's limitations existed prior to the DLI, they did not explain the basis for those conclusions, and the record did not support such severe limitations in the relevant time frame.

Plaintiff argues that the ALJ's dismissal of Dr. Ghumra's opinion is in error because Dr. Ghumra's opinion is "utterly consistent" with Dr. Edelberg's. However, the fact that two physicians found Plaintiff to be substantially impaired years after the DLI does not prove the ALJ erred in discounting their opinion that he was impaired years before they treated him. The ALJ also noted that there were very few medical records before the DLI showing complaints of or treatment for the impairments that Drs. Ghumra and Edelberg found disabling in 2016.

Plaintiff, however, has not shown that he experienced these symptoms more often than the sporadic occasions revealed in the record. Plaintiff clearly had SCFE, which is a congenital condition, before the DLI, but there is no evidence that it caused significantly disabling symptoms until after 2013. *See Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir. 1987) (noting that subsequent disability is not necessarily relevant to a claimant's condition prior to the DLI). As the ALJ noted,

Plaintiff worked as a metalworker, which was performed at the heavy level of exertion, until 2009. Plaintiff counters that he was let go from the position because he was unable to keep up with the physical demands of the job. However, being unable to sustain heavy work is a far cry from being unable to perform even at the sedentary level, as his treating physicians concluded. Neither doctor explained the basis for their conclusion that Plaintiff's disabling symptoms predated their treatment of him by several years. *See Guranovich v. Astrue*, 09 C 3167, 2011 WL 686358, at *21 (N.D. Ill. Feb. 15, 2011), *aff'd*, 465 F. App'x 541 (7th Cir. 2012) (faulting a physician's "conclusory" opinion about the onset date of a disability because "it does not explain the progression of [the claimant's] impairment to allow an inference that the impairment became disabling before the date of last insured"); *see also Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) ("[The claimant] did not produce any medical evidence suggesting the presence of a disabling impairment at any time prior to the expiration of her insured status.").

Accordingly, the ALJ did not err in discounting the opinions of Plaintiff's treating physicians based on the timing of their treatment relationship and the lack of contemporaneous corroborating medical evidence. *See Eichstadt*, 534 F.3d at 667 ("[I]t is evident from the ALJ's decision that she did not 'fail to consider' this evidence, but instead she examined it as required and subsequently concluded that the evidence was irrelevant, because it did not address the correct time period.").

Plaintiff also contends that the ALJ improperly evaluated the opinion of his treating psychotherapist, Dr. Roberts, who concluded in August 2015 that Plaintiff

9

would have difficulty staying on task, and it would be difficult to retrain him due to his ADHD and anxiety; in addition, he opined that those symptoms would make it unsafe for Plaintiff to return to his job as an ironworker.

The ALJ noted that the RFC accounted for many of the concerns raised by Dr. Roberts, in that he was limited to light work and simple, routine tasks that would not require a classroom setting to learn. However, the ALJ gave little weight to the extent that Dr. Roberts' opinion found greater limitations, finding that it was not supported by the treatment record during the relevant period, which showed general psychiatric stability. Plaintiff reported mild attention symptoms in February 2013, denied depression and anxiety, and said that his sleep was adequate and uninterrupted. By May 2013, Plaintiff stated that he was having moderate problems with his ADD and thought that his medication was not working. His dosage was increased, and at a follow-up appointment in August, Plaintiff reported a "mild degree of attention problems," but stated that he was doing "okay" at work, at home, and sleeping. (R. 760.) He had no concerns about excessive anxiety, emotional lability, or depression. An October 30, 2013 progress note indicated that Plaintiff was having anxiety about buying a property and had interrupted sleep, but he was doing okay at home caring for his child.

Although Plaintiff first began seeing a mental health therapist on February 7, 2012, his alleged onset date, records of the majority of his significant psychological symptoms post-dated the DLI. The ALJ therefore had Plaintiff's claim reviewed by psychological expert Maria de los Angeles Davila to opine about his

10

mental health limitations as of December 31, 2013. She concluded that before the DLI, Plaintiff suffered only non-severe mental health conditions, specifically mild deficits in concentration, persistence, and pace. The ALJ gave her opinion some weight, but because there was evidence of ADHD predating the DLI, and it caused Plaintiff some difficulty in his former job (for example, reviewing and following blueprints) the ALJ further limited Plaintiff to simple, routine, and repetitive work tasks, and to only brief interaction with the public and co-workers in order to minimize distractions.

According to Plaintiff, the ALJ erred in discounting the opinion of Dr. Roberts in favor of Dr. Davila because "[t]here is no reason to believe that these conditions did not exist for a long time; there is every reason to believe, though, that based upon Plaintiff's subjective complaints (and his own understandably limited understanding of his conditions) the problem was primarily ADHD. However, there is evidence that Plaintiff's anxiety and panic attacks predated the official diagnosis of those impairments." (Pl.'s Mem. at 10-11.) As explained above, it is ultimately Plaintiff's burden to offer evidence of disability, and he offers no support for the notion that that ALJ should have assumed his mental impairments predated the DLI simply because "there is no reason to believe" they did not before December 31, 2013. Moreover, even if it can be assumed that Plaintiff suffered from anxiety and panic attacks, he offers no proof that the impairments resulted in functional limitations not accounted for in the RFC finding, and the psychological treatment

11

notes during the relevant time period do not support his claim of wholly disabling symptoms.

### B. RFC Assessment

Plaintiff next complains that the ALJ's RFC analysis failed to include all of his non-exertional limitations. He points to evidence of severe mental symptoms including Plaintiff's disjointed performance at the hearing, as well as his panic attacks, anxiety, and difficulty with focus and concentration. Plaintiff has made a fairly persuasive case that he experiences disabling symptoms today and that he has since 2015 and possibly earlier. The problem is that he has not offered evidence that he was disabled before December 31, 2013, which is necessary to disturb the ALJ's finding. Plaintiff's own brief states that he was not diagnosed with anxiety until after 2013; "[i]n the spring of 2015, Plaintiff began to complain of anxiety and panic attacks," (Pl.'s Mem. at 13); and his hearing testimony occurred over four years after the DLI. The ALJ's RFC determination with respect to his non-exertional limitations was therefore supported by substantial evidence.

### C. Subjective Statements

Finally, Plaintiff complains that the ALJ improperly rejected his subjective statements of disabling symptoms as inconsistent and too remote from the relevant time period. Plaintiff is correct that an ALJ may not reject a claimant's complaints of pain (or other symptoms) simply because they are not confirmed by diagnostic tests. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). But the ALJ's analysis of Plaintiff's subjective complaints was not premised on the lack of particular

diagnostic testing. The focus of this case is what limitations Plaintiff suffered before December 13, 2013, and there is little evidence that he suffered from the impairments at issue before the DLI, and there is no evidence other than his subjective statements that they caused disabling functional limitations before then. An ALJ is not required to accept a subjective account of totally disabling symptoms several years after the fact, in the absence of any contemporaneous evidence of those symptoms. *See Eichstadt*, 534 F.3d at 668 ("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time."). The ALJ did not appear to find Plaintiff's claims incredible because he was not truthful, but instead that his memory was faulty given the passage of time. Accordingly, it was not error for the ALJ to consider the fact that Plaintiff's statements were made years after the relevant time frame, that they were not always consistent, and they lacked contemporaneous corroborating medical evidence.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 9] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 14] is granted.

**SO ORDERED.**            **ENTERED:**

**DATE:**    **July 6, 2020**

                                              **HON. MARIA VALDEZ**
                                              **United States Magistrate Judge**